**In re the WELFARE OF G.C.**

No. C7–86–932.

Court of Appeals of Minnesota.

Oct. 28, 1986.

Michael R. Savre, Gavin, Olson, Conkel & Savre, Glencoe, for the Father J.C.

Pete Kasal, McLeod Co. Atty., Michael K. Junge, Asst. Co. Atty., Glencoe, for McLeod County.

Jeanne M.V. Conkel, Glencoe, for the Child G.C.

Michael J. Long, Theis & Long, P.A., Glencoe, for the Mother K.C.

Considered and decided by RANDALL, P.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

### OPINION

FOLEY, Judge.

This is an appeal by J.C., the father of G.C., who was adjudicated both neglected and dependent on November 1, 1985. On December 16, 1985, the trial court issued a dispositional order that required in part that appellant be evaluated to determine whether he should be required to undergo treatment. Upon recommendation that treatment in a sex offender's program be

followed, the trial court ordered on April 28, 1986 that appellant participate in a program offered at the University of Minnesota or in a similar program. Appellant appeals the order requiring him to participate in sexuality treatment and denying him unsupervised visitation with G.C. until treatment is completed. He claims that the imposition of these conditions exceeded the trial court's authority absent a finding of domestic child abuse of G.C. The mother joins with the arguments of McLeod County and the guardian ad litem. We affirm.

## FACTS

On February 27, 1985, respondent McLeod County filed a petition alleging that G.C., born June 20, 1984, was neglected as set out in Minn.Stat. § 260.015, subd. 10(b) (1984). The petition was filed approximately four months after McLeod County was granted protective custody of G.C. and in response to deteriorating parental care of G.C. since that time.

On March 13, 1985, following a temporary hearing on the matter, the trial court found that G.C. was without proper supervision and that her health was in danger. By stipulation of the parties, G.C. was immediately placed in foster care and weekend custody was granted to the mother.

In the months before a hearing on the merits, both parents met with Thomas Olson, Director of Hutchinson Community Hospital's Mental Health Program, for the purpose of custody evaluation. After his initial visitation with the father and again in his final report to the trial court following three subsequent visitations, Olson expressed concern that appellant might sexually abuse G.C. if left unsupervised with her. As a result, McLeod County cancelled all future unsupervised visitation between appellant and G.C. and, immediately prior to trial, amended its petition to allege that G.C. was dependent pursuant to Minn.Stat. § 260.015, subd. 6(d).

Following trial, the court determined that G.C. was both neglected and dependent as a result of the substandard, unsanitary and unsafe condition of the parents'

home, lack of proper nourishment and hygiene provided G.C., and the parents' apparent indifference toward the responsibilities of raising a child.

The evidence at trial indicated a pathetic situation whereby two dependent parents were attempting to raise a child when in all probability they both needed parents themselves. Their mobile home was in utter chaos, replete with garbage and unsanitary facilities creating a dangerous condition for the child. [The mother] did not have the wherewithal to keep the house clean nor to take care of the child. . [appellant] seemed to be best equipped to pointing and giving orders to [the mother] and when she did not respond, he simply thought up another order.. He made little, if any, contribution toward the operation of the household even though he was seldom employed. Those who visited the home found he usually just sat around with lots of time to talk. [The mother] on the other hand simply did not have the training or ability to take care of the home. As a result, the child was wanting for care and supervision; was allowed in dangerous conditions, and suffered from poor nutrition.

Based on Olson's report, the trial court also found:

On August 19, 1985, McLeod County Social Services cancelled all future visitation with [appellant] concerning the child. This was a result of a report received from Mr. Thomas Olson of the Hutchinson Community Hospital whereby he registered concern about [appellant's] unsupervised visitation with his fourteen month old daughter. It was Mr. Olson's opinion that [appellant] may possibly sexually abuse the child if he is left unsupervised with her. During the course of their conversation, [appellant] indicated to Mr. Olson that he became sexually aroused when he saw the bottoms of little girls. At the trial on the merits, [appellant] confirmed this and even indicated to the Court he would often go to the beach to look at the small girls in their bathing suits. On September 6,

1985, the Court received a report from the Hutchinson Community Hospital from Mr. Olson who had been requested to do an evaluation of [the mother and appellant]. It was his impression that neither one of the parents could provide adequate care for the infant adoption to an outside family. His letter to the Court is part of the file.

In its conclusions of law, the trial court stated:

2. * * * The Court finds by clear and convincing evidence that the hygiene provided for the child was so poor the child lacked the proper parental care necessary to develop in a healthy environment. The Court further finds that there is a serious limit to the ability of both parents; that they both need additional training in order for the Court to make a determination as to whether either can in fact properly parent a child and if so, when they can parent the child.

3. The Court also concludes [appellant] neglected the child in a similar degree as did [the mother] by virtue of his mental disability and state of immaturity and laziness concerning the welfare of the child. *The Court further finds a great concern for his sexual abnormation concerning children and · something which must be addressed at a dispositional hearing.* The Court further has considerable concerns toward the health of the child and as to whether or not [the mother] will in fact be able to parent the child in a satisfactory manner at any time.

4. The Court concludes that *the combination of all the dangerous factors involved in the home* and the lack of proper nourishment for the child and their indifference and inability toward the raising of the child produces enough evidence for the Court to conclude by clear and convincing standards that [G.C.] is both neglected and dependent and, therefore, she is so adjudicated. (Emphasis supplied.)

On December 16, 1985 the court issued a dispositional order directing evaluation of appellant at the University of Minnesota Human Sexuality Program "as a precautionary measure in order for the Court to make a determination as to whether or not [appellant] should be the subject of sexuality treatment." The court further provided:

That [appellant] is not required to undergo any treatment program until the Court receives the evaluation, and *only if the evaluation indicates treatment is necessary. This evaluation is ordered since certain testimony did reflect that [appellant] had proclivities in the area of sexual interest with young children* and, therefore, the Court feels such an evaluation is necessary both for his benefit and for the children with whom he associates. (Emphasis supplied.)

On February 20, 1986 the court was advised by Margretta Dwyer, Coordinator for the University of Minnesota Sex Offender Treatment Program, that evaluation of appellant had been completed, that treatment was recommended and that more extensive evaluation would be necessary.

At the dispositional hearing on April 25, 1986, appellant objected to the one year, twice weekly, treatment on the grounds that the court lacked authority to order such action and that the treatment program offered by the University was too lengthy and time-consuming. On April 28, 1986, the court granted appellant 30 days to submit an alternative sex offender program for review; but pending submission approval of an alternative program, the trial court reaffirmed its position that participation in the University program was required before appellant could renew association with G.C.

**ISSUE**

May the trial court, as part of its dispositional order regarding a child adjudicated to be dependent and neglected, require G.C.'s father to participate in a sex offender's treatment program absent a specific finding of domestic child abuse when the evidence supports that such action is in G.C.'s best interests?

## ANALYSIS

Appellant contends that absent a specific finding of domestic child abuse, the trial court did not possess the authority to order completion of a sex offender's treatment program as a condition precedent to his association with G.C.[1] Respondents counter that such an argument is unreasonably restrictive on a juvenile court's power to "serve the spiritual, emotional, mental, and physical welfare of the child [adjudicated neglected or dependent] * * * and, when the child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents." Minn.Stat. § 260.011, subd. 2 (1984). We agree with respondents.

One purpose of the dependency and neglect statutes is to create a temporary remedy with the ultimate goal of returning the child to the natural parents. *In re Welfare of Solomon,* 291 N.W.2d 364, 369 (Minn. 1980). Minn.Stat. § 260.191, subd. 1a requires a trial court to determine why the best interests of the child are served by the disposition ordered:

> **Written findings.** Any order for a disposition authorized under this section shall contain written findings of fact to support the disposition ordered, and shall also set forth in writing the following information:
> (a) Why the best interests of the child are served by the disposition ordered;
> * * *.

It is apparent in the present case that the trial court found appellant's unusual sexual proclivities as one of the dangerous factors involved in the home leading to its finding of dependency and neglect in its November 1, 1985 order. As a result, the trial court fashioned a specific goal with the intent of reuniting father and daughter in a manner that prompted and safeguarded G.C.'s best interests. Moreover, under Minn.Stat. § 260.181, subd. 2 (1984) "[b]efore making a disposition in a case * * * the court may consider any report or recommendation made by the county welfare board, probation officer, or licensed child placing agency, or any other information deemed material by the court." *Id.* Although the trial court's November 1, 1985 findings rely in part on Olson's report, it is clear that this report alone did not provide the basis for requiring appellant to complete sessions in a human sexuality program. The trial court plainly stated in its December 16, 1985 dispositional order that appellant "is not required to undergo any treatment program until the Court receives the [human sexuality] evaluation, *and only if the evaluation indicates treatment is necessary.*" (Emphasis supplied.) A February 20, 1986 letter from Margretta Dwyer, who conducted the evaluation, recommended further treatment.

Since the findings reflect sufficient evidence that the natural father had certain sexual proclivities toward young girls, the trial court acted within its discretion to require appellant's participation in counseling and completion of such treatment as a condition to unsupervised visitation with G.C. Conviction of domestic child abuse is not a prerequisite to a disposition of this nature when it furthers the child's best interests.

Appellant's reliance on *In re Welfare of V.R.,* 355 N.W.2d 426 (Minn.Ct.App.1984), is similarly misplaced. Unlike the present case, the *only* evidence in *V.R.* bearing on neglect of the younger children was sexual abuse of the oldest daughter. Such evi-

1. Minn.Stat. § 260.191, subd. 1b (1984) provides:

> If the Court finds that the child is a victim of domestic child abuse, as defined in § 260.015, subdivision 24, it may * * *:
> (6) order the abusing party to participate in treatment or counseling services.

"Domestic Child Abuse" is defined by Minn.Stat. § 260.015, subd. 24 as:

> (1) any physical injury to a minor family or household member inflicted by an adult family or household member other than be accidental means; or
> (2) subjection of a minor family or household member by an adult family or household member to any act which constitutes a violation of sections 609.329 to 609.324, 609.342, 609.343, 609.344, 609.345, 609.364 to 609.3644, or 617.246.

dence was found to be insufficient to sustain a finding of neglect. Here, appellant does not challenge the finding of neglect and dependency, but rather the disposition resulting from that determination. Disposition after a finding of neglect and/or dependency is a distinct issue that focuses on the best interests of the child and the means for achieving eventual reunion between child and parents in a positive environment. The trial court's action in this case, particularly in view of G.C.'s age and of the age group to which appellant demonstrates sexual abnormalities, was supported by the evidence and was therefore within its discretion.

### DECISION

The trial court's requirement in its dispositional order that the natural father complete sex offender treatment as a condition to unsupervised visitation with G.C. did not constitute an abuse of discretion.

Affirmed.